PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 22-0213-KJM |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| ISHU LAKRA, | |
| Defendant. | |

### I.   INTRODUCTION

**A.   Scope of Agreement.**

The indictment in this case charges the defendant with a violation of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count One).  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in

PLEA AGREEMENT                  1

the indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.     DEFENDANT'S OBLIGATIONS

### A.     Guilty Plea.

The defendant will plead guilty to Count One, a violation of 18 U.S.C. § 371 (Conspiracy to Transport Stolen Property Interstate).  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.     Fine.

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed.  The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation.  The government retains the right to oppose

the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

### C. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

### D. Violation of Plea Agreement by Defendant/Withdrawal of Plea.

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.

The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

E.     **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.D above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### III. THE GOVERNMENT'S OBLIGATIONS

#### A. Recommendations.

1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

#### B. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Conspiracy to Commit Interstate Transportation of Stolen Property in violation of 18 U.S.C. § 371 :

1. There was an agreement between two or more persons to commit Interstate Transportation of Stolen Property;
2. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
3. One of the members of the conspiracy performed at least one overt act for the

purpose of carrying out the conspiracy.

Additionally, the elements the government must prove for a violation of 18 U.S.C. § 2314, Interstate Transportation of Stolen Property are:

1. Defendant transported stolen property between one state and another;
2. At the time the property crossed the state border, the defendant knew it was stolen;
3. The defendant intended to deprive the owner of the ownership of the property temporarily or permanently; and
4. The property had a value of $5,000 or more.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

### V.   MAXIMUM SENTENCE

**A.   Maximum Penalty.**

The maximum sentence that the Court can impose is five years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.   Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years imprisonment.

### VI.   SENTENCING DETERMINATION

**A.   Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the

Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Estimated Guideline Calculation.

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office, or the parties:

Stipulations Affecting Guideline Calculation: The government and the defendant agree that there is no material dispute as to the following Sentencing Guidelines variables and therefore stipulate to the following:

1. Base Offense Level (2B1.1(a)(2)): 6
2. Loss Amount greater than $25 million (2B1.1(b)(1)(L)): +22
3. Involved receiving stolen property and in the business of selling and receiving stolen property (2B1.1(b)(4)): +2
4. Organized scheme to steal or receive stolen vehicle parts (2B1.1(b)(15)(A)): +2
5. Acceptance of Responsibility: See paragraph III.A.2 above - 3
6. Total Offense Level: 29
7. Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.
8. Sentencing Range: 60 months (The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.)

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),

PLEA AGREEMENT 7

or cross-references. Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under <u>United States v. Booker</u>, 543 U.S. 220 (2005).

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which he is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement

constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in Section III above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.D herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII.    ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 12-9-23

TAMARA SOLOMAN
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 12/04/2023

ISHU LAKRA
Defendant

### C. Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 12/9/23

PHILLIP A. TALBERT
United States Attorney

VERONICA M.A. ALEGRIA
Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea

Thieves steal catalytic converters from vehicles for the precious metals they contain, which may be more valuable per ounce than gold. Catalytic converter theft has become popular across the nation because of their value, relative ease to steal, and their lack of identifying markings.

DG Auto Parts LLC aka DG Auto Wreckers aka Blacey's Auto ("DG AUTO") was a criminal enterprise that received large shipments of stolen catalytic converters from its affiliates and franchisees across the nation. DG AUTO used its specialized equipment to "de-can" the catalytic converters it received and then sold the resulting powdered precious metals to a metal refinery. From at least October 2019 through October 2022, NAVIN KHANNA aka Lovin Khanna, TINU KHANNA aka Gagan Khanna, DANIEL DOLAN, CHI MO aka David Mo, WRIGHT LOUIS MOSLEY, and ISHU LAKRA operated DG AUTO and conspired, confederated, and agreed with each other to purchase and transport stolen catalytic converters from California and other states to the state of New Jersey.

N. KHANNA and T. KHANNA opened and controlled bank accounts on behalf of DG AUTO and were the owners of DG AUTO. DOLAN, MO, MOSLEY, and LAKRA worked in DG AUTO warehouses, where they would receive shipments, meet with customers, and sort and grade stolen catalytic converters prior to their purchase by DG AUTO. DG AUTO used its DG AUTO Pricing Application, advertisements and communications on Facebook, and other means to encourage its clients to procure high-value stolen catalytic converters, such as Toyota Prius catalytic converters.

In the Sacramento area, TOU SUE VANG, ANDREW VANG, and MONICA MOUA operated VANG AUTO, through which they knowingly purchased stolen catalytic converters from local thieves. T. VANG and A. VANG opened and controlled bank accounts in the name of VANG AUTO. VANG AUTO shipped stolen catalytic converters across state lines to DG AUTO in New Jersey. Some of these shipments were over 1,000 pounds and contained a single type of high-value catalytic converter, such as the Toyota Prius. For example:

1. On September 3, 2020, T. VANG shipped approximately 300 stolen Toyota Prius catalytic converters from California to N. KHANNA and DG AUTO in New Jersey in return for $400,000 wired to a VANG AUTO bank account.

2. On April 13, 2021, T. VANG shipped two boxes of stolen catalytic converters (one of over 200 high-value Honda "4x4" converters) with a combined weight of 4,370 pounds to N. KHANNA and DG AUTO in New Jersey in return for $975,500.

3. On January 24, 2022, T. VANG shipped two boxes of stolen catalytic converters (one of over 500 Toyota Prius catalytic converters) with a combined weight of 2,776 pounds from VANG AUTO in California to N. KHANNA and DG AUTO in New Jersey in return for $405,035.

4. On February 8, 2022, T. VANG shipped three boxes of stolen catalytic converters (one of high-value Honda "4x4" converters) weighing 4,417 pounds combined from California to N. KHANNA and DG AUTO in New Jersey in return for $270,335.

DG AUTO has wired VANG AUTO over $38 million in return for stolen catalytic converters shipped from California to New Jersey.

N. KHANNA, T. KHANNA, DOLAN, MO, MOSLEY, and LAKRA also conspired, confederated, and agreed with each other to purchase purportedly stolen catalytic converters transported from California to New Jersey from a person they did not know was actually a Confidential Informant. These included the following transactions:

1. On April 7, 2022, DOLAN, LAKRA, and N. KHANNA purchased approximately 53 purportedly stolen catalytic converters for $22,412 from the Confidential Informant.

Based on the converters' parts numbers, DOLAN stated to the Confidential Informant, "You got these out of Cali." LAKRA gave the Confidential Informant a check issued by a DG AUTO bank account.

2. On April 20, 2022, DOLAN, LAKRA, and T. KHANNA purchased approximately 146 purportedly stolen catalytic converters for $73,158 from the Confidential Informant. DOLAN and LAKRA graded the catalytic converters for pricing purposes. DOLAN saw what he thought was blood on one of the catalytic converters and said, "They cut themselves taking the cat." T. KHANNA sent a wire payment to the Confidential Informant from a DG AUTO bank account.

3. On June 2, 2022, T. KHANNA, LAKRA, DOLAN, and MO purchased approximately 283 purportedly stolen catalytic converters for $70,569 from the Confidential Informant. LAKRA, DOLAN, and MO sorted and graded the catalytic converters for pricing. T. KHANNA paid for the catalytic converters via a wire transfer from a DG AUTO bank account.

4. On June 23, 2022, N. KHANNA, T. KHANNA, and LAKRA purchased approximately 198 various purportedly stolen catalytic converters and 100 purportedly stolen brand new Toyota Prius catalytic converters for $166,670 from the Confidential Informant. Prior to the purchase, the Confidential Informant told N. KHANNA and T. KHANNA that the Prius converters had been stolen by a "Cousin" who worked at a California Toyota warehouse. Upon viewing the brand new Prius converters at the DG AUTO warehouse, LAKRA asked, "Where do you get all of these?" Another DG AUTO employee replied, "Don't ask, don't tell policy." N. KHANNA and T. KHANNA agreed to pay the Confidential Informant an additional 8% over the normal value. Then T. KHANNA instructed LAKRA to get the new Prius converters out of DG AUTO as quickly as possible. T. KHANNA paid the Confidential Informant via a wire transfer from a DG AUTO bank account.

5. On July 19, 2022, T. KHANNA, LAKRA, MO, and DOLAN purchased approximately 262 purportedly stolen catalytic converters for $99,390 from the Confidential Informant. LAKRA, MO, and DOLAN unloaded, inspected, and priced the catalytic converters. T. KHANNA paid for the converters via a wire transfer from a DG AUTO bank account.

6. On September 1, 2022, N. KHANNA, T. KHANNA, DOLAN, and LAKRA purchased approximately 402 purportedly stolen brand new Toyota Prius catalytic converter "bricks" – the internal core of a catalytic converter containing the precious metals – and 98 purportedly stolen other catalytic converters for $259,200 from the Confidential Informant. T. KHANNA and N. KHANNA had previously negotiated the purchase of the bricks from the Confidential Informant, who told them the Cousin stole the bricks from the California Toyota warehouse. On two prior occasions, N. KHANNA ordered MOSLEY to take samples of the bricks to a metal refinery for testing. During the purchase, N. KHANNA and the Confidential Informant delivered the bricks directly to a metal refinery. At T. KHANNA's instruction, LAKRA paid the Confidential Informant $50,000 in currency. T. KHANNA wired the remainder of the price to the Confidential Informant from a DG AUTO bank account.

I, ISHU LAKRA, have read and carefully reviewed the above Exhibit A: Factual Basis for Plea with my attorney. The facts described above are true and I adopt this Factual Basis as my own true statement.

Dated: 12/04/2023

*[signature]*

ISHU LAKRA
Defendant

PLEA AGREEMENT                                                                                   A-2